**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
───────────────────────────────────────────

**MATTHEW D.,**
       **Plaintiff,**

  **v.**            **5:20-CV-793**
                 **(TJM)**

**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**
───────────────────────────────────────────

**THOMAS J. McAVOY,**
**Sr. U. S. District Judge**

## DECISION & ORDER

Plaintiff Matthew D. brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), for review of a final determination by the Commissioner of Social Security denying his application for benefits.  Plaintiff alleges that the Administrative Law Judge's ("ALJ") decision denying his application was not supported by substantial evidence and contrary to the applicable legal standards.  Pursuant to Northern District of New York General Order No. 8, the Court proceeds as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

## I. PROCEDURAL HISTORY

Plaintiff applied for Disability Insurance Benefits from the Social Security Administration on May 18, 2017.  See Social Security Administrative Record ("R"), dkt. # 10, at 123-24.  The Administration denied Plaintiff's application on June 13, 2017.  Id. at 57-68.  Plaintiff appealed, and Administrative Law Judge Robyn Hoffman held a hearing on March 13, 2019.  Id. at 22-43.  The ALJ issued an unfavorable decision on March 19,

2019, finding that Plaintiff had not demonstrated he suffered from a severe condition during the relevant period.  Id. at 11-17.  Plaintiff appealed, and the Social Security Appeals Council denied his request for review on May 9, 2020.  Id. at 1-3. Plaintiff then filed the instant action in this Court.  This Court has jurisdiction over the ALJ's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.    FACTS

The Court will assume familiarity with the facts and set forth only those facts relevant to the Court's decision in the body of the decision below.

## III.    THE ADMINISTRATIVE LAW JUDGE'S DECISION

The question before ALJ Hoffman was whether Plaintiff was disabled under the Social Security Act.  The ALJ engaged in the five-step analysis required by 20 C.F.R. § 416.920(a) to determine whether a claimant qualifies for disability benefits.  See R. at 11-17.

> The Social Security Administration regulations outline the five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014).

The ALJ began her decision by discussing the evidence she would consider in this matter.  Id. at 11.  She noted that when a "claimant wishes that written evidence be

2

considered at the hearing . . . the claimant must submit or inform the Administrative Law Judge about the evidence no later than five business days before the date of the scheduled hearing." Id. (citing 20 CFR 404.935(a)).  If the claimant misses that "deadline but submits or informs the [ALJ] about written evidence before the hearing decision is issued," the ALJ may "accept the evidence" under certain circumstances.  Id.  The ALJ can view the evidence when "(1) an action of the Social Security Administration misled the claimant; (2) the claimant had a physical, mental, education, or linguistic limitation(s) [sic] that prevent submitting or informing the Administrative Law Judge about the evidence earlier, or (3) some other unusual, unexpected, or unavoidable circumstance beyond the claimant's control prevented the claimant from submitting or informing the [ALJ] about the evidence earlier."  Id.  (citing 20 CFR 404.935(b)).

Plaintiff, who had non-attorney representation at his hearing, "submitted or informed" the ALJ "about additional written evidence less than five business days before the scheduled hearing date."  Id.  The ALJ noted that Plaintiff's representative asked her at the hearing to "admit additional treatment notes that the claimant had brought with him to the hearing."  Id.  The representative also asked that the ALJ keep the record open to allow her to "submit additional records from Upstate Orthopedics."  Id.

The ALJ refused these requests, explaining that:

I do not find that the claimant and his representative have made diligent efforts to develop the record.  They have been well aware of the claimant's treatment at Upstate Orthopedics for nearly two years and have failed to follow up with the provider in a timely manner.  They have also failed to timely submit the medical records that the claimant had in his own possession.  There is no evidence to show that any of the requirements of 20 CFR 404.935(b) are satisfied and I therefore do not admit this additional medical evidence into the record.  I have also declined to hold the record open further.  The below decision is therefore based on the evidence currently in the file.

3

Id. at 11-12.  The ALJ issued an unfavorable decision six days after refusing to accept this additional evidence.

The ALJ began her decision by determining the period for which Plaintiff was eligible for disability insurance coverage.  Id. at 12.  The ALJ found that "claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2010."  Id.  As such, the ALJ found, "the claimant must establish disability on or before that date . . . to be entitled to a period of disability and disability insurance benefits."  Id.  She concluded that the relevant time period was from December 1, 2007 to December 31, 2010.  Id.

The ALJ then applied the five-step sequential evaluation process, as she deemed necessary.  At Step 1, the ALJ concluded that Plaintiff had not engaged in any substantial gainful activity from December 1, 2007 to December 31, 2010, the relevant period.  Id. at 14.   The ALJ completed her analysis at Step 2.  At that Step, the ALJ concluded that Plaintiff suffered from a number of determinable impairments during the relevant period. Id.  Those impairments were: degenerative joint disease of the right elbow, mild soft tissue swelling of the left third digit, status post anterior cruciate ligament reconstruction of the right knee, mild degenerative joint disease of the right knee, and a left foot mass.  Id. (citing 20 CFR 404.521 *et seq.*).  The ALJ further found that Plaintiff did not "[demonstrate] that he had a medically determinable left knee impairment, hip impairment, lower back impairment, or mental impairment through the date last insured."  Id.

The ALJ further concluded that Plaintiff "did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months."  Id.  As a result, Plaintiff "did not have a severe impairment or

4

combination of impairments." Id.  Because of this finding, the ALJ concluded that "claimant

was not under a disability, as defined in the Social Security Act, at any time from

December 1, 2007, the alleged onset date, through December 31, 2010, the date last

insured." Id. at 16.

The ALJ examined the evidence in explaining her conclusion regarding the severity

of Plaintiff's impairments.  The ALJ noted that Plaintiff complained of "disabling bilateral

knee impairments, a hip impairment, a lower back impairment, and a mental impairment

through his date last insured." Id. at 15.  He claimed that he had symptoms that "included

pain, swelling, and burning sensation in his knees, pain in his hips and lower back, a

tendency for his hip to lock upon him, anxiety, and concentration deficits." Id.  Those

symptoms "caused" Plaintiff "difficulty standing, walking, sitting, and sleeping." Id.  While

the ALJ concluded that Plaintiff's medically determinable impairments could have been

reasonably expected to produce the alleged symptoms," she also found that Plaintiff's

"statements concerning the intensity, persistence, and limiting effects of these symptoms

are not entirely consistent with the medical evidence and other evidence in the record[.]" Id.

The ALJ noted that medical records showed "specifically" that Plaintiff "sought

orthopedic treatment in January 2010 for pain and swelling over the posterior aspect of his

right elbow and pain in left middle finger." Id.  X-rays from that time also showed "a spur

formation at the insertion site of the triceps tendon and olecranon, mild soft tissue swelling

in the left third digit, and no evidence of upper extremity fractures or dislocation." Id.  No

record of a physical examination demonstrated "any specific signs associated with his

elbow and/or middle finger symptoms" during the relevant period. Id.  Treatment for those

injuries was "conservative" during that time. Id.

"The only other treatment records" from the relevant time "indicate that the claimant underwent additional medical imaging in the fall of 2010 due to right knee and left foot pain." Id. "Imaging" of the knee "showed that he was status post anterior cruciate ligament reconstruction and had mild osteoarthritic changes involving the medial, lateral and patellofemoral joint compartment." Id. A CT scan showed that Plaintiff "had a possible [left] foot mass.'" Id. An October 2010 physical exam showed "mild tenderness over his right knee, atrophy of the right knee, good motion and stability of the right knee, a tender bony mass over the lateral left hind foot, and limited subtalar range of motion." Id. at 15-16. Treatment for those conditions was "conservative" during the relevant time. Id. at 16. The records did not show "any distress, left knee abnormalities, sensation deficits, tenderness in his hips and/or lower back, or hip instability through his date last insured." Id. The records also fail to demonstrate "fatigue, anxiety, or deficits in standing, walking, sitting, or concentrating through his date last insured." Id.

Without explaining his speciality or relation to the Plaintiff, the ALJ addressed the 2009 opinion of "Dr. Canizzarro,"[1] which concluded that Plaintiff "was 'very limited' in his ability to perform physical tasks due to his status post right knee surgery." Id. The ALJ found this opinion "not persuasive" because "Dr. Canizzarro has not provided specific clinical findings to support his conclusion, including any surgical records or results of physical examinations." Id. Moreover, "[t]he other evidence of record is also inconsistent

---

[1]This physician's name is spelled in several ways in the Record. The Court has standardized the spelling based on how the physician's own records spell his name.

with Dr. Canizzarro's findings as they do[2] indicate that the claimant demonstrated deficits in lifting, carrying, standing, walking, sitting, pushing/pulling or engaging in postural activities though his last date insured.  Rather, his medical imaging and physical examinations demonstrate minimal physical abnormalities through his date last injured."  Id.  In addition, the ALJ found Dr. Canizzarro's opinion that Defendant was "'[t]otally incapacitated' in 2009 and 'remains disabled' as of October 2010" as "neither inherently valuable nor persuasive as they do not include a function-by-function assessment of the claimant's abilities and address an issue reserved for the Commissioner."  Id.  The ALJ likewise found unpersuasive other opinions from Canizzarro and Physician's Assistant Burnett that found similar limitations; the opinions were not from the relevant time period and the medical record did not support the limitations the medical professionals assigned.  Id.

## IV.   STANDARD OF REVIEW

The Court's review of the Commissioner's determination is limited to two inquiries.  See 42 U.S.C. § 405(g).  First, the Court determines whether the Commissioner applied the correct legal standard.  See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990); Shane v. Chater, No. 96-CV-66, 1997 WL 426203, at *4 (N.D.N.Y July 16, 1997)(Pooler, J.)(citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).  Second, the Court must determine whether the Commissioner's findings are supported by substantial evidence in the administrative record. See Tejada, 167 F.3d at 773; Balsamo, 142 F.3d at 79; Cruz, 912 F.2d at 11; Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).  A

---

[2]From context, it appears to the Court that the ALJ intended to state that the records "do not" show that Plaintiff had the limitations shown.

Commissioner's finding will be deemed conclusive if supported by substantial evidence. See 42 U.S.C. § 405(g); see also Perez, 77 F.3d at 46; Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)("It is not the function of a reviewing court to determine *de novo* whether a Plaintiff is disabled.  The [Commissioner's] findings of fact, if supported by substantial evidence, are binding.")(citations omitted).

        In the context of Social Security cases, substantial evidence consists of "more than a mere scintilla" and is measured by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)).  Where the record supports disparate findings and provides adequate support for both the Plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations. See Quinones v. Chater, 117 F.3d 29, 36 (2d Cir. 1997)(citing Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)); Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990).  Although the reviewing court must give deference to the Commissioner's decision, a reviewing court must bear in mind that the Act is ultimately "'a remedial statute which must be 'liberally applied;' its intent is inclusion rather than exclusion.'" Vargas v. Sullivan, 898 F.2d 293, 296 (2d Cir. 1990)(quoting Rivera v. Schweiker, 717 F.2d 719, 723 (2d Cir. 1983)).

**V.    ANALYSIS**

        At Plaintiff's hearing, the ALJ asked Plaintiff's representative if there were "[a]ny further records that need to be admitted?"  R. at 26.  The representative revealed that additional records existed.  Id.  The ALJ asked "when did you discover that there are new

8

records?"  Id.  The representative explained that she had met with the Plaintiff before the

hearing and that Plaintiff had "brought his personal file."  Id.  The representative "found"

records in that file, "including right knee operative reports" and "a right knee MRI in addition

to progress notes from" Dr. Canizzarro "who is an orthopedist."  Id.  The representative

explained that "[w]e did request updated orthopedics from December 1, 2006 to present.

We received those records, but they did not include anything prior to 2013."  Id.

     The ALJ asked the representative when she had met with Plaintiff and obtained the

records.  Id.  The representative admitted that she had received the records that day, and

that she met him in person for the first time on that day.  Id.  Plaintiff testified that he had

retained his representative's firm in May 2017, but had not met anyone from the firm in

person from that time until his hearing.  Id. at 27.   Instead, he had multiple conversations

with members of the firm on the telephone, especially "every time I had seen my doctor or

gotten something in the mail regarding this.  I would call and find out what it was."  Id.

     The ALJ then turned to Plaintiff's representative: "I don't understand.  If the firm has

been with him since May 2017 and had multiple conversations with him, why is today the

first day you're representing that you're learning of this treatment."  Id. at 27-28.  The

representative explained that "we were aware of the treatment" and had asked the provider

to produce records from December 1, 2006 to the present.  Id. at 28.  The provider did not

send the earlier notes in question.  Id.  "I don't know why this wasn't sent," she explained.

Id.  "I don't work in medical records."  Id.  Still, she admitted, "I'm not trying to make

excuses.  I know this isn't appropriate."  Id.  The ALJ agreed with the statement, and then

explained that "[m]y question is really about diligence because you have a client with a big

old red flag of a date last insured of 2010, and you're trying to get evidence[.]" Id.  The firm

met with Plaintiff, the ALJ pointed out, but "[u]p until the moment of the hearing, there is no evidence.  There is no, I shouldn't say no.  There is a seven-page record from 2010 from Dr. Canizzarro [sic]."  Id.

Noting the evidence that the Plaintiff had brought to the hearing, the ALJ addressed the representative and explained that "you had this information well before the hearing today, and it is your obligation to develop the record to show his burden that he has a disability."  Id. at 28-29.  The representative responded that "I was relying on Upstate Orthopedics to provide us with the information in response to our request."  Id. at 29.  "Unfortunately," the representative claimed, "we did not receive the entire period of records that we have requested."  Id.

The ALJ then continued: "I'm at a loss.  I'm really at a loss here.  What is it you're asking from me?"  Id.  "I would ask," the representative responded "that the evidence be admitted."  Id.  She asked the ALJ to admit "[t]he evidence he brought in.  It shows two surgeries and a right-knee MRI.  The first surgery is October 17, 2007.  I would argue he's a candidate for medical listing 1.03 based on reconstructive surgery of the ACL."  Id.

The ALJ was not pleased: "It's so disappointing when things like this happen.  It really is.  I mean you're giving me records the moment the hearing starts.  I have no way of preparing for this hearing."  Id.  The ALJ asked to see the records, but wondered how the law firm could ask for records, not receive them, and then have them turn up in the Plaintiff's personal possession.  Id.  While some of the records had been submitted to the ALJ, surgery reports had not been included.  Id.  The ALJ wanted to know why the representative failed to "have a conversation with your client when you got assigned this case saying, hey, I don't have any evidence prior to date last insured, and this conversation

10

did not come up?"  Id. at 30.

> After more discussion, the ALJ decided:
>
> We're going to photocopy these.  I'm going to reserve on whether I'm accepting them.  I do not find any diligence here whatsoever on behalf of your firm.  I don't care if you asked for records and they didn't respond adquately to your requests.  You still looked at a file and saw there about seven pages before the last date insured.  And you didn't apparently have any further conversations that would have brought to light these records that your client had in his hand the entire time you've been representing him which goes back to 2017.

Id. at 30.  The ALJ then asked the representative whether she had any other records she wanted to admit.  Id. at 31.  After a discussion about records during the relevant period that Dr. Canizzarro's office might have failed to provide and a request by the representative for an opportunity to obtain additional records from Dr. Canizzarro, who had treated Plaintiff since 2007, the ALJ declined Plaintiff's request for leave to submit evidence not yet in the record.  The ALJ stated:

> I'm saying no to all of this.  I don't find any due diligence.  I'm not admitting any of it.  It's you're responsibility to advocate on behalf of your client and you guys did not.  So the record is what it is.  I'm not admitting any of it.  With that, I don't have any evidence.  You still want to proceed with the hearing?

Id. 32.   Plaintiff consented to continue with the hearing.  Id.  Six days after the hearing, the ALJ issued the opinion described above, which found that the medical evidence did not support the limitations pointed to in Dr. Canazzaro's assessments from the relevant period.

The record evidence addresses Dr. Canizzarro's opinions on Plaintiffs' condition during the relevant period.  On March 30, 2009, Dr. Canizzarro signed a statement addressed "To Whom it May Concern" that provided that Plaintiff was under his care for his right knee and was "totally incapacitated . . . until further notice."  Id. at 338.  He offered the same opinion for the same reason on May 26, 2009, concluding that Plaintiff would be

11

incapacitated until July 7, 2009.  Id. at 341.  Dr. Canizzarro again found Plaintiff "totally incapacitated" on October 20, 2009, "pending sx."[3]  Dr. Canizzarro also completed a Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination for the State of New York sometime in the fall of 2010.  See R. at 343-44.  There, Canizzarro reported that Plaintiff was status post "revision ACL reconstruction" of the right knee, and that he suffered from right knee pain, catching, and weakness.  Id. at 343.  Canizzarro reported that Plaintiff was "very limited" in walking, standing, sitting, lifting, carrying, pushing, pulling, and bending, and that he was also very limited in climbing stairs.  Id.

As explained above, the ALJ found that Dr. Canizzarro's findings about Plaintiff's limitations were "not persuasive."  R. at 16.  She failed to provide "specific clinical findings to support [her] conclusion, including any surgical records or results of physical examinations."  Id.  The ALJ also noted that other record evidence was "also inconsistent with" her "findings" and the limitations he assigned.  Id.  Likewise, the ALJ found, Dr. Canizzarro's short statements  in 2009 about Plaintiff's alleged incapacity were not "neither inherently valuable nor persuasive" because they lacked detail about specific functions and reached a conclusion reserved to the Commissioner.  Id.

A court in social security cases must apply the law "liberally[,] . . . for it is a remedial statute intended to include not exclude."  Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990).  "Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ

---

[3]"On-line sources often conclude that "SX" in medical notations refers to "symptoms."  See, e.g., https://medical-dictionary.thefreedictionary.com/Sx (consulted 4/15/21); https://abbreviations.yourdictionary.com/articles/medical-abbrev.html (consulted 4/15/21).  Other sources, however, find that SX can mean "surgery."  See, e.g., https://www.abbreviations.com/term/153768 (consulted 4/15/21); https://www.acronymfinder.com/Surgery-(SX).html (consulted 4/14/21).

generally has an affirmative obligation to develop the administrative record." <u>Perez v. Chater</u>, 77 F.3d 41, 47 (2d Cir. 1996).  That duty exists even when the claimant has legal representation.  <u>Id.</u>

In other words, "'the social security ALJ, unlike a judge at trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." <u>Craig v. Comm'n of Soc. Sec.</u>, 218 F. Supp.3d 249, 261 (S.D.N.Y. 2016) (quoting <u>Moran v. Astrue</u>, 569 F.3d 108, 112 (2d Cir. 2009).  The Social Security regulations require an ALJ "to develop a claimant's complete medical history." <u>Id.</u> (citing <u>Pratts v. Chater</u>, 94 F.3d 34, 37 (2d Cir. 1996)).  "Whether the ALJ has met [her] duty to develop the record is a threshold question." <u>Id.</u>  Even before reviewing the record to determine whether the substantial evidence supported the ALJ's decision, "'the court must first be satisfied that the ALJ provided the plaintiff with 'a full hearing under the Secretary's regulations' and also fully and completely developed the administrative record.'" <u>Id.</u> (quoting <u>Scott v. Astrue</u>, No. 09-CV-3999 (KAH), 2010 U.S. Dist. LEXIS 68913, 2010 WL 27736879, at *12 (E.D.N.Y, July 9, 2010)).  "Remand is appropriate where this duty is not discharged." <u>Id.</u> at 262 (citing <u>Moran</u>, 569 F.3d at 114-15).[4]

Moreover, "[a]n ALJ has an affirmative obligation to develop a claimant's complete and accurate medical record." <u>Camellia O. v. Comm'r of Soc. Sec.</u>, No. 1:19-CV-1153 (DJS), 2021 WL 354099, at *5 (N.D.N.Y. Feb. 2, 2021)(citing 42 U.S.C. § 423(d)(5)(B)("[T]he Commissioner of Social Security ... shall develop a complete medical

---

[4]"We vacate not because the ALJ's decision was not supported by substantial evidence but because the ALJ should have developed a more comprehensive record before making his decision."

history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability."); Perez v. Chater, 77 F.3d at 47 (2d Cir. 1996)(noting that a "hearing on disability benefits is a non-adversarial proceeding," and as such, "the ALJ generally has an affirmative obligation to develop the administrative record")(citation omitted)).  "An ALJ's failure to comply with this mandate is legal error." Id. (citing Rose v. Comm'r of Soc. Sec., 202 F. Supp. 3d 231, 239 (E.D.N.Y. 2016)). "However, the ALJ's duty to develop the record is not unlimited and is discharged when the ALJ 'possesses [the claimant's] complete medical history' and there are no 'obvious gaps or inconsistencies' in the record." Id. (quoting Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) (internal quotation marks omitted)).

Based on this legal standard, the Court must order remand for the ALJ to develop the record further.  The Plaintiff argues that the ALJ lacked substantial evidence for her conclusion that Plaintiff did not suffer from a severe impairment within the meaning of the Social Security Act.  Here, however, the ALJ was in some sense correct to say that the medical record did not support Dr. Canizzarro's findings on limitations.  The medical records available at the time of the ALJ's decision did not include any information about Plaintiff's surgery or any detailed reports on his injury or his progress after surgery.  The hearing testimony detailed above, however, indicates that evidence about Defendant's knee injury, treatment, and limitations during the relevant period may very well have been available.  Plaintiff had some such information available to him at that hearing, and his representative claimed that more records may have been available from the physician who treated him for the condition in question.

The ALJ refused to consider this evidence, and refused to provide the Plaintiff with

14

additional time to supplement the record, citing regulations that required a claimant to provide all medical evidence five days before a hearing, and which provided a very narrow exception to that rule.  Plaintiff does not necessarily challenge the ALJ's decision to exclude this evidence.  Plaintiff's counsel, as the exchanges related above demonstrate, clearly failed to develop the record in the way expected of an attorney.  The Court understands the ALJ's frustration with Plaintiff and Plaintiff's counsel's failure to follow the rules.  All legal proceedings function better when the parties are prepared and armed with the evidence needed to make their case.

At the same time, the Social Security Act is a remedial statute, not a mechanism to initiate an adversarial proceeding.  The ALJ here treated the proceeding more as an adversarial rather than a remedial one, refusing to consider available evidence because she concluded that Plaintiff's counsel did not act diligently enough to discover that evidence. As explained, the role of the ALJ is to oversee the process and, when necessary, to ensure proper development of the record.  Here, the ALJ denied Plaintiff's claim, in part, because no medical records supported the claims made by his treating physician.  In making this decision, the ALJ was aware that other medical records were available that might have helped explain Plaintiff's condition and limitations during the relevant time.  The ALJ did not use or obtain this material, but instead denied the claim based on the information currently in the record.

The Court must find that the ALJ failed to develop a proper record; aware that the record was lacking and that additional information was available, the ALJ relied on procedural rules to exclude evidence she knew was available.  This failure to develop the record under these circumstances requires remand even before considering whether

substantial evidence supported the ALJ's findings.  The Court  will therefore remand for development of such a record.  On remand, the ALJ should permit the Plaintiff to provide any relevant medical records which he can discover.  The Court declines to address Plaintiff's other arguments, as they may become moot after the ALJ acts to develop a record.

**VII.   CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is **GRANTED.**  The Commissioner's motion for judgment on the pleadings is **DENIED.**  The Clerk of Court is directed to **REMAND** the matter to the Commissioner of Social Security for proper development of the administrative record.

Thomas J. McAvoy
Senior, U.S. District Judge

**IT IS SO ORDERED.**

**Dated**: April 16, 2021